# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MOHAMMED RAHIM,           :
    Plaintiff,            :
                          :
v.                        :                3:22cv619 (MPS)
                          :
C.C. BARSTO, et al.,      :
    Defendants.           :

## INITIAL REVIEW ORDER

The *pro se* plaintiff, Mohammed Rahim, is a sentenced inmate[1] housed within the Connecticut Department of Correction ("DOC"). He filed this civil rights complaint pursuant to 42 U.S.C. § 1983 against twelve DOC employees who work at Corrigan-Radgowski Correctional Center ("Corrigan"): Counselor Campbell, Counselor King, Correction Officer Hayer, Correction Officer Stalling, Lieutenant Peau, Grievance Reviewer John Doe, Dr. McPherson, RN Kayla, RN Brennan, Counselor Barsto, and Grievance Reviewer John Doe 2. Compl., ECF No. 1 at 3.[2] He asserts Fourteenth and Eighth Amendment violations based on his inadequate mattress. He also alleges a violation of Article First of the Connecticut Constitution. He seeks damages and declaratory and injunctive relief.

---

[1] The Connecticut DOC website reflects that Rahim was sentenced on July 13, 2018 to thirty years of incarceration and is presently housed at MacDougall-Walker Correctional Institution ("MacDougall"). *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (court may "take judicial notice of relevant matters of public record."); *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=369021 (last visited on June 13, 2022).

[2] Rahim has also listed the DOC as a defendant sued in its individual and official capacity. *Id.* However, a state agency like the Connecticut DOC is not a person subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Jacques v. Dep't of Correction*, No. 3:18-CV-00308 (JAM), 2018 WL 2390141, at *2 (D. Conn. May 25, 2018). Accordingly, any claim against DOC under section 1983 is dismissed as not plausible.

For the following reasons, the Court will permit Rahim to proceed on his Eighth Amendment claims.

## I.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic*, 550 U.S. at 556).

Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.     FACTS

For purposes of initial review, the Court considers all of the allegations to be true. The Court also takes notice of facts reflected in Rahim's attached exhibits.

At all times relevant to this action, Rahim was incarcerated at Corrigan. ECF No. 1 at 4, ¶ 1. He is now housed at MacDougall-Correctional Institution. *Id.*

Rahim suffers from severe back and neck pain as a result of the mattress provided for his use while at Corrigan and in prison. *Id.* at 6, ¶ 1. He experiences intense debilitating pain that can limit his movement and enjoyment of life. *Id.* at 7, ¶ 2. Rahim spends most of his days locked in his cell for twenty hours per day or more, and a substantial portion of that time is spent on his bunk mattress. *Id.* at 3. The mattress has a polyester core and a vinyl covering. *Id.* ¶ 5. The mattress is about three to four inches thick and is designed to withstand about seventy pounds of pressure before reaching its maximum compression. *Id.* at ¶¶ 6-7. At its maximum compression point, the mattress can be as thin as about one-half inch. *Id.* at 8, ¶ 9. Maximum compression can be reached within seven to ten days or at most a thirty-day period. *Id.* at ¶ 11. Once fully compressed, the mattress does not rebound and feels like a steel platform, causing pain in numerous parts of the body, insomnia and nerve problems. *Id.* at ¶¶ 10-12. The polyester material in the mattress bunches up and creates pressure points that cause cramping in an inmate's leg, hip, back neck and shoulder muscles. *Id.* at 9, ¶ 13. The vinyl coverings on the mattress crack and tear, and the resulting sharp edges irritate and scratch. *Id.* at ¶ 14.

Rahim alleges that Defendants Barsto, Campbell, King, Peau, Greene, Kayla, Hayer, Stalling, Brennan and McPherson are aware of the mattress problems due to the volume of inmate mattress complaints. *Id.* at ¶ 15. Rahim wrote to Campbell, Barsto, King, Lieutenant Peau, Lieutenant Greene and medical staff but his concerns were disregarded. *Id.* at 3, ¶ 5,

Although there is a policy and practice for an annual inmate mattress replacement, a new mattress will still become inadequate after a month or sometimes even after only seven to ten

days, and inmates such as Rahim must suffer for a full year prior to receiving a new mattress. *Id.* at 9, ¶ 17. Nevertheless, Defendants refuse to replace the mattresses prior to the one-year anniversary date. *Id.* at ¶ 18.

Rahim gets out of bed by grabbing the edge of his bunk or ladder to push himself into a standing position. *Id.* 10, ¶ 20. He has to massage and put hot bags of water on his knotted sore muscles. *Id.* Rahim's allegations pertain to the mattress that he had to use for an extended period of time. *Id.*

Correction Officers Stalling and Hayer recognized that Rahim had a visibly damaged mattress, but they only made jokes about the mattress and forced Rahim to continue suffering from sleep deprivation by using the inadequate mattress. *Id.* at 11. Although Rahim contacted both Lieutenant Green and Lieutenant Peau about his inadequate mattress, they failed to take any responsive action. *Id.*

Rahim's exhibit A shows that he filed numerous inmate requests complaining of pain from his mattress dated from April 30, 2019 through February 14, 2021. ECF No. 1-1. These inmate requests reflect that Rahim was instructed by a counselor to write to the medical unit and his unit manager about obtaining a new mattress; that Nurse Kayla responded by stating that he had been added to the sick call list on several occasions and that he had been prescribed with pain relief medication while he waited for his appointment; and that Lieutenants Peau and Greene did not respond to his inmate request for a new mattress. *Id.*

Rahim alleges that John Does Grievance Reviewers 1 and 2 failed to take any action to provide Rahim with a suitable mattress in response to his grievances. ECF No. 1 at 12. Exhibit B includes copies of Rahim's grievances. ECF No. 1-2.

In his Level 1 grievance IGP #140-21-020 addressed to Counselor King dated August 14, 2020, Rahim complained about custody staff's failure to respond to his complaints and requested a "brand new mattress" to remedy his inadequate mattress. *Id.* at 4. This grievance received a "compromised" disposition due to Rahim's failure to accept a mattress exchange and was signed by a correctional staff member with an illegible signature. *Id.* Rahim filed an appeal complaining that he was offered a used mattress identical to his old mattress; this appeal was denied for the stated reason that "staff attempted to do a mattress exchange with you however, it was reported that you refused the mattress because it wasn't new." *Id.* at 5. This response to the Level 2 appeal was signed by an individual with an illegible signature.

Rahim has also attached his medical grievance IGP #30471 dated February 12, 2021, complaining that he was seen by Dr. McPherson on September 10, 2020, but he was only provided with an x-ray that showed nothing and Vitamin-D pills. Ex. B, ECF No. 1-2 at 2. On March 15, 2021, RN Brennan rejected the medical grievance as untimely under Administrative Directive 8.9 because it was filed more than thirty days after his appointment. [3] *Id.* Rahim filed an appeal complaining that his grievances were sent back. *Id.* at 3. A DOC staff member with an illegible signature rejected this appeal for the stated reasons that he could not "appeal Diagnosis/treatment" and he did not file his appeal within five days of March 15, 2021. *Id.* at 3.

For purposes of initial review, the Court assumes that the reviewers with illegible signatures are John Doe Level 1 Reviewer and John Doe Level 2 Reviewer.

III.   **DISCUSSION**

---

[3] The relevant version of Directive 8.9 was in effect from July 24, 2012 until DOC's revised Directive 8.9 became effective on April 30, 2021. *See Toussaint v. Guadarama*, No. 3:21CV32 (MPS), 2022 WL 19337, at *4 (D. Conn. Jan. 3, 2022).

Rahim asserts that Defendants have violated his Eighth Amendment and Fourteenth Amendment equal protection rights. ECF No. 1 at 6, ¶ 2. Rahim appears to assert Eighth Amendment claims based on the inadequate mattresses issued by DOC on behalf of other inmates. While a litigant in federal court may represent himself under 28 U.S.C. § 1654, as a non-attorney, he may not represent others. *See United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008) ("[A]n individual who is not licensed as an attorney may not appear on another's behalf in the other's cause."); *Eagle Assocs. v. Bank of Montreal,* 926 F.2d 1305, 1308 (2d Cir. 1991) (Section 1654 "does not allow for unlicensed laymen to represent anyone else other than themselves") (internal quotation omitted). To the extent that he seeks to assert claims on behalf of other inmates, these claims are dismissed.

Liberally construed, Rahim's complaint asserts two constitutional claims under the Eighth Amendment: (1) that his medical care for his back pain was inadequate because he was deprived of an adequate mattress, and (2) that the conditions of his confinement were unconstitutional because of the inadequate mattress provided to him. The Court will first consider whether Rahim has stated any plausible constitutional claims against Defendants in their individual capacities for damages.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). A plaintiff's conclusory allegations about what a defendant "should know" about are insufficient to allege personal involvement. *Monroe v. Cty. of Rockland*, No. 21 CV 5244 (VB), 2021 WL 4084149, at *1 (S.D.N.Y. Sept. 8, 2021); *see also Kravitz v. Leis*, No. 17-cv-

6

600, 2019 WL 1332774, at *8 (N.D.N.Y. Feb. 11, 2019) (finding defendant's "general knowledge" of plaintiff's religious affiliation "insufficient to demonstrate personal involvement," because "plaintiff must show "some tangible connection between the unlawful conduct and the defendant"). In *Tangreti v. Bachmann*, the Second Circuit held that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' ... The violation must be established against the supervisory official *directly*." 983 F.3d 609, 618 (2d Cir. 2020) (emphasis added) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

### A.    Medical Deliberate Indifference

The court construes the complaint as asserting medical deliberate indifference by Nurse Kayla, Nurse Brennan, Dr. McPherson, and the John Doe Level 2 Grievance Reviewer.

Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In order to state a deliberate indifference claim, the plaintiff must allege both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citation omitted). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).   The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Subjectively, the defendants must have been actually

aware of a substantial risk that the plaintiff would suffer serious harm as a result of their conduct. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006). "[M]ere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., a conscious disregard of a substantial risk of serious harm." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

For initial review purposes, Rahim has sufficiently alleged that he had an objectively serious condition requiring medical attention and a mattress that caused him sleep deprivation and severe neck and back pain. *See Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013) ("sleep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment"); *Jones v. City of New York*, No. 18-CV-1937 (VSB), 2020 WL 1644009, at *8 (S.D.N.Y. April 2, 2020) (finding objective element satisfied where allegations "g[a]ve rise to a plausible, common-sense inference that the standard-issue mattress either exacerbates or causes Plaintiff's chronic and substantial back pain."); *Guarneri v. Hazzard*, No. 06 Civ. 0985, 2008 WL 552872, at *6 (N.D.N.Y. Feb. 27, 2008) (citations omitted) ("[S]evere back pain, especially if lasting an extended period of time, can amount to a serious medical need under the Eighth Amendment."). Thus, the Court next considers whether Rahim has sufficiently alleged the subjective element as to each Defendant.[4]

Nurse Kayla

---

[4] Rahim alleges that Barsto, Campbell, King, Peau, Greene, Hayer, Stalling, Brennan, and McPherson and almost every DOC employee was aware of the hazardous condition posed by the prison mattresses due to the volume of inmate complaints. *See* ECF No. 1 at 3 (¶ 5), 9 (¶ 15). A defendant's knowledge about another inmate's complaint about his mattress does not, however, establish that the defendant was conscious that the plaintiff's mattress posed him a substantial risk of serious harm. *See Abernathy v. Comm'r of Correction*, No. 3:20-CV-00628, 2021 WL 1340018, at 6* (VAB), (D. Conn. Apr. 2, 2021) (explaining defendant must have subjective knowledge of substantial risk of serious harm to plaintiff but disregarded it).

Rahim has not alleged specific facts describing Nurse Kayla's deliberate indifference. Under the Federal Rules of Civil Procedure, a complaint must be a plain and concise statement of facts constituting a claim recognized by law, and therefore a plaintiff may not file exhibits in lieu of alleging facts in the complaint against a defendant. *See* Fed. R. Civ. P. 8; *Cruz v. Naqvi*, No. 3:21CV49 (MPS), 2021 WL 1406102, at *4 (D. Conn. Apr. 14, 2021). The present record also fails to suggest that Nurse Kayla—who responded to his inmate requests by placing him on sick call and advising him that pain medication was available in the commissary—acted with conscious disregard of his pain or need for a better mattress. *See* ECF No. 1-1 at 3, 6 19. No facts indicate that she could have but failed to exercise an ability to provide Rahim with a more immediate medical appointment or provided him with a new mattress in response to his inmate requests. *See Warwick v. Doe,* 2020 WL 2768804, at *5 (D. Conn. May 27, 2020) (explaining that absent facts suggesting that the defendant actually had and failed to exercise the power to get plaintiff in to see a dental surgeon sooner, plaintiff's allegations amounted to negligence).

Accordingly, the Court will dismiss without prejudice the Eighth Amendment claim against Nurse Kayla as not plausible.

Dr. McPherson

Rahim has also not alleged any facts about his treatment from Dr. McPherson in the body of his complaint. Even the facts reflected in attached medical grievance do not suggest that McPherson acted with deliberate indifference. His medical grievance complained that he was seen by Dr. McPherson, but she failed to provide him with an egg crate foam topping for his mattress or a referral to an orthopedist. ECF No. 1-2 at 2. He claimed that he needed to be seen by an orthopedist who could perform tests and provide him with proper pain management and an

adequate mattress. *Id.* But an inmate's preference for certain medical treatment does not give rise

to a constitutional claim. S*ee Chance*, 143 F.3d at 703 ("[s]o long as the treatment given is

adequate, the fact that a prisoner might prefer a different treatment does not give rise to an

Eighth Amendment violation."). A medical provider may act with deliberate indifference by

consciously providing an inmate with "an easier and less efficacious" treatment plan, particularly

if the provider does so because of ulterior motives, such as improper monetary incentive. *Id.* at

703–04; *see also Braham v. Perelmuter*, 2017 WL 3222532, at *16–17 (D. Conn. July 28, 2017).

But the present record provides no indication that Defendant McPherson acted with deliberate

indifference or consciously provided Rahim with less effective treatment due to improper

motives. Accordingly, the Court dismisses Rahim's Eighth Amendment claim against

McPherson as not plausible.

<u>Brennan and John Doe Level 2 Grievance Reviewer</u>

Rahim has not alleged specific facts in his complaint to describe how RN Brennan acted

with a conscious disregard of his serious medical need for a different mattress. Rahim's exhibit B

reflects that Nurse Brennan rejected his medical grievance IGP # 30471 on March 15, 2021 as

untimely under Administrative Directive 8.9.[5] It appears that Nurse Brennan applied the revised

---

[5] The relevant version of Directive 8.9 in effect at that time of Rahim's filing in February 2021 required the following:

> An inmate seeking review of an issue involving a diagnosis or treatment or an administrative health care issue must first attempt to seek informal resolution either by speaking to the appropriate staff member or by sending a written request to a supervisor. [] Admin. Dir. at 8.9(10). The supervisor must respond to a written attempt at informal resolution within fifteen calendar days of receipt of the request. *Id.* If the informal resolution of the inmate's health care issue is unsatisfactory or unsuccessful, the inmate may apply for a Health Services Review by filing the Inmate Administrative Remedy Form, CN 9602. *Id.* at 8.9(11) & (12). In completing the form, the inmate must check off either the box labeled "Diagnosis/Treatment" if the issue involves a diagnosis or treatment of a medical, mental health, or dental condition, or the box

version of Directive 8.9, which requires any Health Services Administrative Remedy Form to be

filed within 30 calendar days of the occurrence or discovery of the cause or reason for filing the

Health Services Review grievance.[6]  However, this version of Directive 8.9 was not effective

until April 30, 2021. *See Toussaint*, No. 3:21CV32 (MPS), 2022 WL 19337, at \*4. The relevant

version of Directive 8.9 contained no procedural time limits. *See Hall v. Pillai*, No. 3:15-CV-

1603 (AWT), 2018 WL 1732151, at \*6 (D. Conn. Apr. 10, 2018) (noting "Directive 8.9 (10)

(no time limits for informal resolution) & (11) (time limits only for responses to Health Services

Review forms"); *see also Raynor v. Erfe*, No. 3:20-CV-1102(VLB), 2022 WL 972441, at \*6 (D.

Conn. Mar. 31, 2022) ("Though this request was made more than a year after the incident,

Administrative Directive 8.9 does not have a time requirement on when grievances must be

submitted."). Rahim's grievance reflects that RN Brennan acted negligently in discharging her

duty but not that she rejected Rahim's grievance with a culpable mental state of mind. *See*

*Warwick v. Doe*, No. 3:20-CV-227 (JAM), 2020 WL 2768804, at \*6 (D. Conn. May 27, 2020)

---

labeled "All Other Health Care Issues" if the issue involves an administrative matter involving health care. *Id.*

If the inmate seeks review of a diagnosis or the treatment or lack of treatment of a medical, dental, or mental health condition, the Health Services Review Coordinator must schedule a Health Services Review Appointment with a physician, dentist, psychologist, psychiatrist, or advanced practice registered nurse ("APRN"), as appropriate, as soon as possible. *Id.* at 8.9(11)(A). If, after the appointment, the physician, dentist, psychologist, psychiatrist or APRN concludes that the existing diagnosis or treatment is appropriate, the inmate is deemed to have exhausted his or her health services review remedy. *Id.* If the physician, dentist, psychologist, psychiatrist or APRN reaches a different conclusion with regard to the appropriate diagnosis or course of treatment for the inmate's condition, he or she may either provide the appropriate diagnosis or treatment or refer the case to the URC for authorization indicating the need for different treatment. *Id.* at 8.9(11)(B).

*Lindsay v. Cook*, No. 3:19CV1486 (JCH), 2021 WL 5827080, at \*5 (D. Conn. Dec. 7, 2021)

[6]  https://portal.ct.gov/DOC/AD/AD-Chapter-8.

11

(finding URC coordinator who allegedly "failed in discharging her duties," acted with simple negligence" rather than deliberate indifference). Accordingly, the Court dismisses the deliberate indifference claim against RN Brennan without prejudice.

Likewise, Rahim has not alleged any non-conclusory facts about Level-2 John Doe Grievance Reviewer for IGP #30471. The record at exhibit B indicates Level-2 John Doe rejected Rahim's Level-2 appeal due to untimeliness and a restriction against appealing a diagnosis or treatment. Even if this rejection constituted a misapplication of the Directive, Rahim's allegations fail to suggest that John Doe Level-2 Grievance Reviewer rejected his appeal due to his conscious disregard for Rahim's medical need for a new mattress. At present, Rahim's complaint and exhibit indicates that John Doe Level-2 Grievance Reviewer may have acted negligently, which is not sufficient to state a claim of deliberate indifference. Thus, the Court dismisses without prejudice this Eighth Amendment claim against Level-2 John Doe Grievance Reviewer for IGP #30471.

**B.     Deliberate Indifference to Condition of Confinement**

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide humane conditions of confinement. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted). As previously noted, Rahim has sufficiently alleged that he was subjected to a condition of confinement that resulted in a "sufficiently serious" deprivation based on an inadequate mattress. He must also allege that the defendant prison officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. I consider whether he has done so as to particular defendants below.

12

<u>Hayer, Stalling, and King</u>

Rahim alleges that Officers Hayer and Stalling "reco[g]nized a visibly damaged mattress" and joked about it but failed to provide him with relief. ECF No. 1 at 11. In addition, his complaint references exhibit D (video preservation request), which states that Counselor King instructed Officer Hayer to check Rahim's mattress, that Hayer confirmed that 30 to 40 percent of the cotton was gone and that the mattress smelled and contained stains, and that Hayer promised a new mattress. ECF No. 1-4 at 4. Rahim represents that Officers Hayer and Stalling offered him one of the used mattresses that were all in the same or worse conditions as his current mattress, and that Stalling indicated that he would have Rahim sleep on metal rather than a mattress. *Id.* For purposes of initial review, the Court concludes that Rahim's complaint sufficiently states that Officers Hayer and Stalling acted with conscious disregard of his basic human need for an adequate mattress.

No alleged facts or attached exhibits raise an inference that Counselor King was aware that Rahim was being subjected to a serious deprivation due to his inadequate mattress but failed to take any remedial action. In fact, Rahim's Exhibit A shows that King responded to Rahim's notice that he had moved cells with the question: "Did you get a new mattress?" ECF No. 1-1 at 12. Further, as previously noted, Rahim's exhibit D indicates that Counselor King instructed Officer Hayer to check his mattress.

Accordingly, the Court permits Rahim's Eighth Amendment claims to proceed against Officers Hayer and Stalling but dismisses without prejudice the Eighth Amendment claim against Counselor King.

<u>Lieutenants Peau and Greene, and Correctional Counselors Campbell and Barsto</u>

13

Rahim alleges that Campbell, Barsto, Lieutenants Peau and Greene were not responsive to his complaints. ECF No. 1 at 3 (¶ 5), 11. His exhibit A indicates that his inmate requests to both Lieutenants Peau and Greene received no response. ECF No. 1-1 at 8, 15. But a defendant's mere failure to respond to an inmate's complaint or request is not sufficient to establish that defendant's direct involvement in the constitutional violation. *Coleman v. Cunningham*, No. 3:21-CV-01392 (VLB), 2022 WL 1720356, at *5 (D. Conn. May 27, 2022). Rahim's complaint contains no nonconclusory factual allegations describing how Peau, Greene, Campbell, or Barsto acted with conscious disregard to Rahim's deprivation of an adequate mattress. Accordingly, the Court must dismiss the claims against these defendants without prejudice.

John Doe Grievance Reviewers for IGP #140-21-020

Rahim alleges no non-conclusory factual allegations reflecting that the John Doe Grievance Reviewers for IGP #140-21-020 acted with conscious disregard to his serious need for an adequate mattress. Rahim provides only conclusory allegations that the John Doe Reviewers had the ability to issue orders to provide Rahim with a new mattress, but he has not described what authorities these defendants held other than to review grievances. ECF No. 1 at 12. His exhibit B Level 1 grievance dated August 14, 2020 complained about custody staff's failure to provide him with a new mattress and that his "one grievable matter" was being subjected to cruel and unusual punishment by using a mattress that was smelly, "slit open" and "missing cotton." ECF No. 1-2 at 4. The John Doe Level 1 Grievance Reviewer afforded a "compromised" disposition to Rahim's grievance on the ground that Rahim had been offered but refused a mattress exchange. *Id.* He appealed this disposition on the basis of having been "offered a used mattress that look[ed] almost identical to the one [he had] just it didn't have a cut in it[.]" *Id.* at

14

5. He claimed that he had been "told" that he "would get a new one and even then they get flat within a week." *Id.* The John Doe Level 2 Grievance Reviewer denied the appeal based on Rahim's refusal of the exchange mattress as not new; the Level 2 reviewer explained that "[w]hen the facility conducts a mattress exchange[,] the mattress is swapped with another used mattress that [is] still considered to be in 'good condition[.]'" *Id.* The reviewer also stated that "this office found no documentation/response attached from any staff noting" that Rahim had been told he would receive a new mattress. *Id.*

Thus, the present record indicates that the John Doe Grievance Reviews for IGP #140-21-020 provided responses that reflected the fact Rahim had already been offered a mattress exchange. Rahim's complaint fails to indicate that the John Doe Level-1 Grievance Reviewer had any awareness that Rahim had not been offered an adequate mattress during the mattress exchange. No facts suggest that either John Doe Reviewer could have but failed to take action to ensure that Rahim received a new mattress as he requested in his appeal. Furthermore, Rahim has no constitutional right to have his grievances addressed or to receive what he considers to be a proper response. *See Hinton v. Pearson*, No. 3:21-CV-863 (MPS), 2021 WL 4521994, at *8 (D. Conn. Oct. 4, 2021) (citing *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018)).

Accordingly, Rahim has not plausibly alleged that these defendants acted with deliberate indifference to his need for an adequate mattress. *Cooper v. Cook*, No. 3:19-CV-01794 (JAM), 2020 WL 1923233, at *4 (D. Conn. Apr. 21, 2020) (noting plaintiff's "conclusory allegations fall far short of plausibly alleging deliberate indifference"). Thus, the Court dismisses without prejudice the Eighth Amendment claims against John Doe Level 1 Reviewer and John Doe Level 2 Reviewers for IGP #140-21-020.

15

### B.       Fourteenth Amendment Equal Protection

The Court also construes Rahim's complaint as asserting a violation of the Fourteenth Amendment Equal Protection Clause.

The Fourteenth Amendment Equal Protection Clause does not mandate identical treatment for each individual but "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an Equal Protection claim, a plaintiff must allege facts showing that: (1) he or she was treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). A plaintiff must demonstrate evidence of "purposeful discrimination ... directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted).

Even when a suspect classification is not at issue, the Equal Protection Clause still requires that individuals be treated the same as "similarly situated individuals." *Fortress Bible Church v. Feiner,* 694 F.3d 208, 222 (2d Cir. 2012). Thus, a plaintiff may bring a "class of one" Equal Protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Second Circuit, class-of-one plaintiffs "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d

Cir. 2006) (citation omitted). The high level of similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain*." See Witt v. Village of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 639 F. App'x 44 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

Rahim has not alleged membership in a suspect class because prisoners in general are not a suspect class. *See Graziano v. Pataki*, 689 F.3d 110, 117 (2d Cir. 2012). Accordingly, Rahim must proceed as a "class of one." Rahim has not alleged any facts suggesting that he has been treated differently than other similarly situation inmates. Accordingly, Rahim has not raised a plausible equal protection claim because there is no inference of any differential treatment lacking a legitimate basis.

### D.  Official Capacity Claims

Rahim has sued defendants in their official capacities. ECF No. 1 at 3. His complaint seeks damages; a declaratory judgment stating that the current standard issue mattress is not suitable for long-term usage and violates the Eighth Amendment; and an injunction ordering defendants to perform an MRI for purposes of diagnosing Rahim's condition. ECF No. 1 at 13.

The Court must dismiss Rahim's claim for monetary damages against the defendants in their official capacities because, under the Eleventh Amendment, DOC employees are immune from money damages suits in their official capacities. *See Currytto v. Doe*, 2019 WL 2062432, at *4 (D. Conn. 2019) (citing *Pennhurst State Sch. & Hosp. v. Haldermann*, 465 U.S. 89, 100 (1984) and *Davis v. New York*, 316 F.3d 93 (2d Cir. 2002)).

Rahim's requests for declaratory and injunctive relief must also be dismissed because he is no longer housed at Corrigan and is, therefore, no longer subject to any ongoing constitutional violation due to any of the defendants' conduct. *See Washington v. McKoy*, 2020 WL 3042122, at *1 (2d Cir. 2020) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.") (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)).

### E.     Connecticut Constitutional Claims

This Court can exercise supplemental jurisdiction over a state law claim if: (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state law claim permits the conclusion that the entire action comprises one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact. *Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), abrogated on other grounds, *Graham v. Connor*, 490 U.S. 386 (1989); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Rahim asserts state law claims under the Connecticut Constitution, Article First, sections 9[7] and 20.[8] *See* ECF No. 1 at 5-6, ¶¶ 1-2. Even assuming that Rahim's state law claims derive from the same factual predicate as his plausible Eighth Amendment claims, the court will decline to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim" that "raises a novel or

---

[7] Article First, Section 9 provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

[8] Article First, Section 20 provides: "No person shall be denied equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

complex issue of State Law....").

The Connecticut Supreme Court recognized a private cause of action for monetary

damages under Article I, sections 7[9] and 9 of the Connecticut Constitution where the claims

arose out of unreasonable searches and seizures and unlawful arrest by police officers. *Binette v.*

*Sabo*, 244 Conn. 23, 47-49 (1998). In reaching its decision, the Connecticut Supreme Court

"emphasize[d] that [its] decision to recognize a *Bivens*-type remedy in this case does not mean

that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47,

Although the Connecticut Supreme Court created a cause of action under Article First,

sections 7 and 9 for a *Bivens*-type claim, it has not applied section 7 or 9 in the context of a case

involving claims relating to prison conditions. Therefore, the court declines to exercise

supplemental jurisdiction over Plaintiff's claims asserted under Article First, section 9 of the

Connecticut Constitution. *See Woolard v. Santiago*, No. 3:19CV1256 (VLB), 2020 WL

2079533, at *11 (D. Conn. Apr. 30, 2020) (declining jurisdiction for claims concerning inmate's

confinement under section 9*); see also Torres v. Armstrong*, No. CV990427057S, 2001 WL

1178581, at *1, 6-7 & n.6 (Conn. Super. Ct. Sept. 6, 2001) (narrowly construing *Binette* in a civil

action asserting claims of violations of an inmate's rights under the United States and

Connecticut Constitutions, including claims of "cruel and unusual punishment under the federal

constitution" and a claim of a deprivation "of his rights under ... article first, § 9" of the state

constitution, and "declin[ing] to recognize [a] damages action[ ] under the Connecticut and

---

[9]  Article First, Section 7 provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

United States constitutions under the circumstances of th[e] case").

Even assuming Rahim had alleged a plausible claim that he had been deprived of equal protection under the law, this Court must decline to exercise supplemental jurisdiction over his claims under Article First, Section 20. *See Pierce v. Semple*, No. 3:18CV01858 (KAD), 2018 WL 6173719, at *6 (D. Conn. Nov. 26, 2018) ("neither this court nor the Connecticut Supreme court has ever recognized a private cause of action under Article First, § 20 of the Connecticut Constitution."); *Richard v. Strom*, No. 3:18-CV-1451 (CSH), 2018 WL 6050898, at *8 (D. Conn. Nov. 19, 2018) (concluding "[t]here is no established private right of action under the religious discrimination, due process, or equal protection provisions (Article First, Sections 3, 8, and 20)"); *Minto v. Dep't of Mental Health & Addiction Servs.*, No. HHDCV176076730S, 2018 WL 710124, at *9 (Conn. Super. Ct. Jan. 11, 2018) ("Connecticut courts have unanimously declined to recognize a private cause of action under article first, § 20"); *see also Torres*, 2001 WL 1178581, at *5-*7, & n.4 (Conn. Super. Ct. Sept. 6, 2001) (refusing to recognize prisoner's claims for money damages and injunctive relief brought directly under Article First, Sections 1, 4, 8, 9, 14 and 20 of the Connecticut Constitution). Thus, the Court concludes that it is inappropriate to exercise supplemental jurisdiction over these claims brought under the Connecticut constitution that raise new and undeveloped issues under state law. *See* 28 U.S.C. § 1367(c)(1). Accordingly, the court dismisses these claims without prejudice.

## IV.   ORDERS

The Court enters the following orders.

(1) Consistent with the foregoing, the case shall proceed on Rahim's Eighth Amendment deliberate indifference claims against Correctional Officer Hayer and Correctional Officer Stalling in their individual capacities.

Defendants Kayla, Brennan, McPherson, King, Campbell, Barsto, Peau, Greene and John Doe Level-1 Grievance Reviewer and John Doe Level-2 Grievance Reviewer are DISMISSED without prejudice from this action.

All other federal claims, including official capacity claims, are DISMISSED without prejudice. The Court declines to exercise supplemental jurisdiction over Rahim's state law claims of violations of the Article First of the Connecticut Constitution. These claims are DISMISSED without prejudice.

If Rahim believes he can allege facts to cure the deficiencies identified in this ruling, he may file a motion to amend and attach an amended complaint within **thirty (30) days** from the date of this order. Plaintiff is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference. Any amended complaint must also name in the case caption each defendant against whom Rahim asserts a claim.

(2) The Clerk shall verify the current work address of Correction Officer Hayer and Correction Officer Stalling with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint, [ECF No. 1], to them at their confirmed addresses within twenty-one (21) days of this Order, and report on the status of the waiver request on the thirty-fifth (35th) day after mailing. If a defendant fails to return the waiver request, the clerk shall make arrangements for in-person service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall send a courtesy copy of the Complaint, [ECF No. 1], and this Order to

the DOC Office of Legal Affairs and to the Connecticut Attorney General.

(4) The defendants shall file a response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If the defendants choose to file an answer, defendants shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within six months (180 days) from the date of this Order. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has

more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendant or defense counsel of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendant's counsel by regular mail.

**SO ORDERED** this 12th day of July 2022, at Hartford, Connecticut.

/s/

Hon. Michael P. Shea
United States District Judge

23